UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN BELLOCCHIO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. _____ |
| BEST WESTERN INTERNATIONAL, INC., KENTEN ENTERPRISES, LLC, d/b/a BEST WESTERN SUITES OPRYLAND, | ) JURY DEMAND ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff, John Bellocchio, through his undersigned attorneys, states as follows:

## INTRODUCTION

1. This civil action seeks declaratory and injunctive relief for the injuries suffered by Plaintiff John Bellocchio, a disabled small business owner who travels around the country training service dogs for the disabled, including disabled veterans, a vulnerable population that call Tennessee home at a higher rate than many other states in the Union. While preparing for one of his many, regular visits to Tennessee to offer his services to disabled clients in January of 2020, Mr. Bellocchio booked and paid for accommodations at the Best Western Suites Opryland. As a courtesy, he called the hotel to notify them that he would be staying with his service dog Seamus, as is his right pursuant to the Americans with Disability Act of 1990. However, two staff members of Defendant Kenten Enterprises, LLC, which owns and operates the Best Western Suites Opryland, refused to comply with the Americans with Disabilities Act and

cancelled his reservation. When Mr. Bellocchio raised concerns with parent organization Best Western International, Inc., the company tasked with training and quality assurance throughout Best Western hotels, representatives disclaimed any responsibility or control over Best Western Suites Opryland. Due to the frequency of his visits to Nashville, Tennessee, his status as a Best Western rewards member, and the ever-escalating prices of hotels in Nashville, Mr. Bellocchio brings this suit to ensure he can secure affordable accommodation at Best Western Suites Opryland during his travels to Nashville without having his rights violated.

## PARTIES

2. Plaintiff John Bellocchio ("Mr. Bellocchio") is an adult citizen and resident of Hackensack, New Jersey.

3. Defendant Best Western International, Inc. ("Best Western") is an Arizona nonprofit corporation headquartered in Phoenix, Arizona. Best Western is registered in Tennessee as a foreign non-profit corporation, with its registered agent in Nashville, Tennessee, located in Davidson County and the Middle District of Tennessee.

4. Best Western is a membership association consisting of owners of hotels branded as Best Western-affiliate hotels. Thus, each Best Western-affiliate hotel is individually owned.

5. Best Western is tasked with large scale endeavors such as marketing, quality control, and strategy for Best Western-affiliate brands, leaving most day-to-day operations of Best Western-affiliate hotels to their individual owners.

6. Defendant Kenten Enterprises, LLC ("Kenten") is a Tennessee limited liability corporation that operates a Best Western-affiliate hotel at 201 Music City Circle, Nashville, Tennessee 37214, located in Davidson County and the Middle District of Tennessee.

7. Kenten registered the assumed name "Best Western Suites Opryland" with the State of Tennessee, and calls the hotel it operates at 201 Music City Circle "Best Western Suites Near Opryland" (hereinafter, the "Best Western Suites Opryland") on its website and signage.

8. As of December 2019, Kenten is a single member LLC.

9. This single member is believed to be Kenten's registered agent, Shantu Hari, located at the same address as the Best Western Suites Opryland and Kenten's company headquarters at 201 Music City Circle.

## JURISDICTION AND VENUE

10. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title Ill of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.; see also* 28 U.S.C. §§ 2201 and 2202.

11. Venue in the Middle District of Tennessee is proper under 28 U.S.C. § 139l(b) because it is the district in which one of the two defendants reside, and because a substantial portion of the events or omissions giving rise to the claims occurred within the Middle District of Tennessee.

## JURY DEMAND

12. Mr. Bellocchio requests a jury trial on the issues and claims set forth in this Complaint.

## FACTS

### General Background

13. The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., is a federal statute that imposes enforceable standards addressing discrimination against individuals with disabilities in various institutions, services, and accommodations.

14. Title III of the ADA prohibits discrimination based on disability in public accommodations.

15. Mr. Bellocchio qualifies as an individual with a disability because he has been medically diagnosed with mental impairments in the form of post-traumatic stress disorder ("PTSD"), anxiety, and depression that substantially limit one or more major life activities. 42 U.S.C. § 12102.

16. As a result of his conditions, Mr. Bellocchio experiences seizures.

17. Mr. Bellocchio has a certified service Labrador retriever named Seamus that accompanies him at all times to address his particular medical needs.

18. Seamus has qualified as a service dog under the ADA since 2016.

19. The Technical Assistance Manual issued to assist with compliance of Title III of the ADA defines a service animal as "any animal individually trained to do work or perform tasks for the benefit of an individual with a disability."

20. Seamus was trained by service dog expert Frank Pugliese and Mr. Bellocchio, who at that time was completing his certification as a fully certified service dog trainer, and his training was verified and tested by Mr. Pugliese.

21. Seamus has a USDA / Health and Human Services ID, verifying he is permitted to accompany Mr. Bellochio in aircraft, hotels, ambulances and hospitals, ships, and all restaurants.

22. Specifically, Seamus is trained as a psychiatric service animal. Seamus can detect Mr. Bellocchio's PTSD, anxiety, or depression symptoms and actively interrupts them.

23. As Mr. Bellocchio's PTSD also causes seizures, Seamus is trained in seizure alert.

24. As a hotel owner and operator, Best Western Suites Opryland is a facility covered by Title III of the ADA.

25. Because it maintains control over particular operations of all of its affiliated hotels, including staff training and enforcement of legal compliance, Best Western is an entity covered by the ADA with regard to these particular operational functions.

**Mr. Bellocchio's Travels to Tennessee**

26. Mr. Bellocchio owns and operates a corporation known as "Fetch and More," which primarily operates as a nationwide training service for service dogs.

27. Mr. Bellocchio has trained service dogs in forty states.

28. Fetch and More specializes in training service dogs for armed forces veterans suffering from post-traumatic stress disorder and other armed-service related maladies.

29. As of 2017, Tennessee has the fourteenth highest veteran population in the United States.

30. Accordingly, Mr. Bellocchio travels to Tennessee regularly to train service dogs for disabled Tennessee veterans.

31. As it is situated at the intersection of two major national throughways in Interstate 40 and Interstate 65, Mr. Bellocchio often passes through Nashville while traveling to and from other parts of the country to train service dogs.

32. On average, Mr. Bellocchio spends 40 nights per year in Tennessee hotels due to his work with Fetch and More.

33. In 2020, Mr. Bellocchio has already been to Middle Tennessee twice, and has three more service contracts set to be performed:

    a. January 23-24, 2020: service dog evaluation, Gallatin, Tennessee;

    b. January 28 - February 8, 2020: service dog training, Gallatin, Tennessee;

    c. June 10 - 15, 2020: guard dog training, Gallatin, Tennessee;

    d. September 15-25, 2020: service dog training, Cookeville, Tennessee; and

    e. October 19-30, 2020: service dog training, Cookeville, Tennessee.

**The Best Western Suites Opryland Commits Discrimination**

34. On January 1, 2020, Mr. Bellocchio booked a room at the Best Western Suites Opryland for January 23, 2020, when his travels on behalf of Fetch and More would next bring him to the Nashville area.

35. Mr. Bellocchio booked and fully paid for his hotel room through a website operated by Best Western, www.bestwestern.com.

36. As a courtesy and to avoid triggering any unnecessary anxiety and stress during his travels, Mr. Bellocchio telephoned the Best Western Suites Opryland and explained to the male clerk that answered the phone that Seamus would be staying in his room with him during his stay due to Mr. Bellocchio's risk of seizures.

37. The clerk on duty loudly and aggressively informed Mr. Belloccio that Seamus would only be permitted to stay in his room if Mr. Belloccchio presented paperwork attesting his need for the service dog, why he needed Seamus, what kind of service Seamus provided, and other highly personal information.

38. Pursuant to the ADA, when a disabled person attempts to enter a facility with his or her service dog and it is not obvious that the dog is a service animal, staff may only ask two specific questions: (1) is the dog a service animal required because of a disability? and (2) what work or task has the dog been trained to perform?

39. Facility staff are prohibited by law from requesting any documentation for the dog, requiring that the dog demonstrate its task, or inquiring about the nature of the person's disability.

40. Mr. Bellocchio attempted to explain these legal requirements to the Best Western Suites Opryland employee to whom he was speaking.

41. The Best Western Suites Opryland employee stated, "Too bad," called Mr. Bellocchio arrogant, and hung up on him.

42. Mr. Bellocchio called the Best Western Suites Opryland again, and a female employee picked up the phone.

43. Before he could begin speaking, the female clerk began berating Mr. Bellocchio, stating, "Your disability is your problem."

44. The female clerk informed Mr. Bellocchio that the Best Western Suites Opryland had the right to block Mr. Bellocchio from entering the hotel unless he complied with the previous clerk's instructions.

45. Mr.Bellocchio asked to speak to a manager.

46. The female clerk informed Mr. Bellocchio that his reservation was cancelled and hung up the phone.

47. Mr. Bellocchio suffered pain, suffering, and embarrassment as a result of this interaction.

48. Mr. Bellocchio suffered a panic attack and further emotional distress as a result of this interaction.

### b. Another Best Western-Affiliated Hotel Similarly Subsequently Violated Mr. Bellocchio's Rights

49. On February 21, 2020, Mr. Bellocchio booked and paid for a hotel reservation on the same website operated by Best Western, www.bestwestern.com, at the Best Western New Richmond, St. Croix County, Wisconsin.

50. Again, Mr. Bellocchio phoned the hotel as a courtesy to inform them about Seamus.

51. The clerk first informed Mr. Bellocchio that pets are not permitted.

52. After Mr. Bellocchio explained that Seamus is a certified service dog, the clerk explained Mr. Bellocchio could not stay in the room he had booked containing a king-size bed and carpeted floors, as service dogs were only permitted to stay in rooms with double beds and wooden floors.

53. Mr. Bellocchio explained that pursuant to the ADA, people with service dogs are required to have access to all rooms in the hotel.

54. Mr. Bellocchio asked to speak to a manager, who reiterated the same instructions and limitations as the clerk.

55. Mr. Bellocchio cancelled his reservation to the Best Western New Richmond and booked another room at a different Best Western a half hour away.

56. Mr. Bellochio again suffered pain, suffering, embarrassment, and emotional distress as a result of this interaction.

## Best Western Fails to Rectify the Situation

57. Mr. Bellocchio called and wrote to Best Western, expressing his concerns that the Best Western Suites Opryland and the Best Western New Richmond had violated his rights pursuant to the ADA.

58. Despite the fact Mr. Bellocchio's calls pre-dated the date of his cancelled bestwestern.com reservation, Best Western corporate staff never attempted to rectify Best Western Suites Opryland' violation of his rights.

59. According to Best Western's website, Best Western is responsible for training Best Western-affiliated hotels' personnel.

60. Best Western's website also claims that Best Western is responsible for quality assurance for all Best Western-affiliated hotels.

61. On information and belief, Best Western maintains authority over Best Western-affiliated hotels to require compliance with the ADA and prohibit discrimination by stripping affiliated hotels of the right to use Best Western branding pending an internal investigation upon receiving notice that a Best Western-affiliated hotel has violated a potential customer's rights pursuant to the ADA.

62. In 2014, a news report of behavior similar to that alleged in this Complaint became widely publicized. A family attempting to stay in a Louisiana Best Western-affiliated

9

Case 3:20-cv-00398   Document 1   Filed 05/11/20   Page 9 of 13 PageID #: 9

hotel with their service dog called in advance as a courtesy, and were informed hotel management did not permit pets of any kind and had their reservation cancelled.[1]

63. Upon learning of this violation, Best Western announced that it was removing the Louisiana hotel from its booking website, and ordered the hotel to remove or cover all references to Best Western in the hotel pending a trial at its corporate headquarters.

64. Best Western thus possesses, and has previously used, the ability to enforce franchisee compliance with the ADA using strong, coercive measures.

65. However, in response to Mr. Bellocchio's letter notifying Best Western of similar conduct, James Cope, Best Western's Manager of Customer Care, responded that "Best Western **requires** that its member hotels comply with all applicable laws, including the Americans with Disabilities Act and **prohibits** unlawful discrimination…" but that "Best Western branded hotels, including the Best Western Suites Near Opryland, are independently owned and operated and are solely responsible for the day-to-day operations of the hotels, including the actions of their employees." (*See* Exhibit 1, James Cope 1/20/2020 letter (emphasis added)).

66. Cope's letter indicated he was forwarding Mr. Bellocchio's letter to the owner of Best Western Suites Opryland.

67. Mr. Bellocchio has never received any response from Best Western Suites Opryland.

68. On information and belief, lack of unflattering media exposure, not inability to control the actions of its franchisees, explains the dissonance between Best Western's indifferent

---

[1] *Hotel Owner Responds After Reservations Were Canceled Over Service Dog*, WAFB 9 News (Jun. 20, 2014), https://www.wafb.com/story/25823714/hotel-owner-responds-after-reservations-were-cancelled-over-service-dog/.

response to Mr. Bellocchio's complaints on the one hand, and its aggressive, coercive response to an identical situation in 2014 on the other.

**Mr. Bellocchio is at Risk of Potential Future Harm**

69. Despite these awful experiences, Mr. Bellocchio still intends to stay at Best Western-affiliated hotels during his travels, particularly Best Western Suites Opryland.

70. Mr. Bellocchio has a Best Western rewards membership.

71. Mr. Bellocchio's business often takes him to remote areas where there are very limited or no alternative hotel options.

72. A recent study found that Nashville is the most expensive city in America in terms of average hotel prices.[2]

73. Best Western Suites Opryland is situated right next to an Interstate 40 onramp, making it an ideal location to stay when Mr. Bellocchio performs his work throughout Middle Tennessee, including the three visits currently scheduled in the coming months.

74. Accordingly, Best Western Suites Opryland is a reliably affordable and geographically convenient option for Mr. Bellocchio during his many travels to and through the Nashville area, and he would stay at the hotel in the future if it were to cease violating his rights.

## COUNT I

(*Discrimination under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182 et seq., against Both Defendants*)

75. Mr. Bellocchio incorporates the allegations of paragraphs 1 through 74 above as if fully set forth herein.

---

[2] Kathleen Serie, *New Study Ranks Nashville as Most Expensive City for Average Hotel Rooms*, Fox 17 Nashville (Oct. 11, 2019), https://fox17.com/news/local/new-study-ranks-nashville-as-most-expensive-city-for-average-hotel-rooms.

76. Defendants' acts and omissions in this matter discriminated against Mr. Bellocchio because of his disability in violation of the ADA.

77. Mr. Bellocchio is "disabled" within the meaning of the ADA, as he has been diagnosed with Post Traumatic Stress Disorder, anxiety, depression, and seizures, and he uses his service dog Seamus to mitigate these conditions.

78. The Best Western Suites Opryland is a "public accommodation" within the meaning of 42 U.S.C. § 12181(7)(A), as it is a hotel with more than five rooms and is not occupied by its owner.

79. Defendant Kenten, as the owner of the Best Western Suites Opryland, "owns" a place of public accommodation within the meaning of 42 U.S.C. § 12182(a), Best Western Suites Opryland.

80. Defendant Best Western operates a place of public accommodation within the meaning of 42 U.S.C. § 12182(a), as it maintains control over the operations of the Best Western Suites Opryland to the extent it trains its staff to comply with the ADA and can revoke branding rights from hotels that do not comply with the ADA to force compliance.

81. Defendants violated Title III of the ADA, 42 U.S.C. § 12182, by refusing to provide Mr. Bellocchio equal access to its facilities at the Best Western Suites Opryland on or about January 23, 2020, by cancelling his reservation when he questioned the propriety of this refusal, and discriminating against him on the basis of his disability.

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Bellocchio respectfully requests that this Court issue:

(a) A Declaratory Judgment that determines that the Defendants at the commencement of the subject lawsuit are in violation of Title III of the

Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*;

(b) Injunctive relief against the Defendants including an order requiring the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals;

(c) An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C.§ 12205; and

(d) Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Dated: May 11, 2020

Respectfully Submitted,

*s/ Seamus T. Kelly*
Seamus T. Kelly (TN BPR# 032202)
David J. Goldman (TN BPR# 035151)
MUSIC CITY LAW, PLLC
209 10th Avenue South, Suite 560
Nashville, TN 37203
(615) 200-0682
seamus@musiccityfirm.com
david@musiccityfirm.com

*Counsel for Plaintiff John Bellocchio*